No 70.—Roosvelt and Barker, plaintiffs in error, *vs.* Charles J. McDowell, executor of Richard S. Walker, deceased, defendant in error.

The executor of a deceased copartner cannot be sued at law for a copartnership debt. The surviving copartner is alone liable to be sued therefor.

This was an action brought by the plaintiffs in error against the defendant in error, in the Superior Court of the county of Pike.   The record disclosed that the note sued on was made by the defendant's testator while in life, and one Jeremiah Leak as copartners in trade, under the partnership, name and style of Walker and Leak, and that, at the time of the institution of the suit, the copartner Leak was still surviving.   The defendant pleaded the general issue, and also *plene administravit.*   Upon the first trial the defendant confessed judgment and appealed.   While the cause was pending on the appeal, the plaintiffs by leave of the court amended their declaration by adding a count for money had and received.

At February Term, 1846, of the court below, this cause came on to be tried before Judge Floyd, when the counsel for the defendant demurred

to the action, insisting that the representative of a deceased partner was not liable to a suit at law upon a partnership debt, but that the plaintiffs' only remedy at law was against the surviving copartner. The counsel for the plaintiffs in reply contended, that although, anterior to the act of 1818, this was true, yet that act authorized plaintiffs to sue either the representative or the survivor separately, or both jointly—whereupon after argument of counsel, the court below held that the said act of 1818 did not authorize the plaintiffs to sue the representative of the deceased partner separately at law, and accordingly nonsuited the plaintiffs.

Afterwards and during the same term, the counsel for the plaintiffs moved a rule to set aside said judgment of nonsuit, and to reinstate the case upon the following grounds :

1st. Because the court erred in deciding, that by the act of 1818, the representative of a deceased partner could not be sued separately at law.

2d. Because the court nonsuited the plaintiffs alone on the case made by the plaintiffs' declaration.

Which rule was refused by the court below, and the motion of plaintiffs' counsel denied.

To which decision the counsel for plaintiffs excepted.

James M. Calhoun, representing William W. Arnold for the plaintiffs in error.

After stating the facts of the case and adverting to the hardship of being compelled after the appeal, on a mere technicality, to bring this writ, insisted :

1st. That this case presents the question of a right construction of the act of 1818.—*Prin. Dig.* 443. In the determination of which it becomes necessary to look to the law anterior to its passage, and the defects in that law, and the remedy proposed by this act, provided the act be a remedial act; and

1st. What was the law before its passage ? We admit that anterior to its passage, the *practice* of the courts of law was to " compel " " holders of notes " signed by partners, one of whom was dead, to sue the survivors alone. But was this law ? In such cases there was *no survivorship ;* but the representatives and the survivors became tenants in common of the partnership effects, which after the debts were paid, were to be divided among them in proportion to their interests.—*Gow on Part.* 348 ; *Collyer on Part.* 65.

The estates of both the deceased as well as of the survivors, are eventually liable to the full payment of all the partnership debts.—*Gow on Part.* 359 ; *Collyer on Part.* 343, 350 ; 2 *John. C. R.* 511. And it is not necessary to sue the survivors to insolvency in the first instance, before resorting to the estate of the deceased.—3 *Ves.* 566 ; 1 *Mylne and Keane R.* 582-7 ; *Cond. Rep.* 176. At law in case of death of one of the partners, it became impossible, as was supposed, to join the representative of the deceased partner in the action with the survivor, because the judgment would be different; one *de bonis testatoris*, and the other *de bonis propriis.*—*Gow on Part.* 359.

But I believe it never has been expressly decided in an action like the present against the representative of the deceased alone at law, that you could not recover. The *practice* arose out of the doctrine contained in the proposition immediately preceding, that the judgment would be different in connection with the *form* of the contract. But we insist that this *practice* of suing the survivor alone, was not law, and in support of our position insist that, by the law-merchant-partnership, contracts like the present, though joint only in form, were joint and several—for as by that law, and it was a part of the common law, no survivorship was allowed. From which we argue inferentially that the note must have been joint and several. For survivorship at common law is the necessary consequence of

the death of a joint owner or holder. And if the partners are not joint owners, they could not be jointly bound. Again : we insist that in equity, which more fully recognizes the true principles of the *Lex mercatoria*, partnership contracts have always been looked upon as joint and several.—*Gow on Part.* 359 ; *Collyer on Part.* 343, 350 ; 1 *Peters Rep.* 317.

So if one partner has had to pay more than his share of the debts, he could call on the other to contribute.—*Gow on Part.* 359 ; 2 *John. Ch. Rep.* 397.

If, therefore, a partnership note be joint and several, by the law-merchant, and that law be a part of the common law of the land, certainly after the death of one of the partners, a several suit could have been maintained on it against the representative of the deceased partner. We admit that dining the life of all the partners, the action might be defeated. But that is not the question. It is, Can a several suit, after the death of a partner, be maintained against his representative? Then the *practice* has been contrary to law. But it is urged that if this be so—if the note be joint and several—then in case of death and a suit against both, the judgments would be different. This objection would now apply with equal, if not greater force under the act to joint promisers, who it is admitted are included and intended in the act. But our case is not obnoxious, even to this objection : we have sued only the representative, and our judgment will be *de bonis testatoris.* Hence, whether the law anterior to the passage of this act was in accordance with the practice or not, in either case our suit might have been maintained ; in the former case the legislature intended to change the practice and the act became and was a remedial one ; if the latter, the legislature intended for some cause to correct the illegal practice and establish the law, and the act was both remedial and declaratory. In either case we are in its letter, and this was admitted below.

2d. What remedy does the act give? It admits before its passage, in case of a joint note and death of one of the makers, " the holder " was " compelled " by the " usage " and " custom " of courts of law " to sue the survivors alone." It looks upon this " usage and custom " of the holder's being " compelled " to sue the survivors alone as a hardship on the " holder," which required a remedy. It affords this remedy by giving the holder the legal right " to sue the survivors or the representative, or both jointly or severally," " at his discretion." In addition to this, the courts of law had compelled holders to sue in equity, which the legislature also intended to remedy. Before its passage our only remedy against the estate of a deceased partner was in equity.—*Gow on Part.* 359.

The court erred in nonsuiting us on the facts stated in the petition alone, because there was a count therein—a common count—against the defendant, in his representative character alone, for money had and received by his intestate. If we could have proved this, the court erred. They had not pleaded the nonjoinder of Leak in abatement, and could not have prevented a recovery.—1 *Peter's Rep.* 317.

3d. Again : a prior motion might have been made to dismiss the appeal ; for the defendant had confessed a judgment, and appeals lie not from confessions.

SAMUEL T. BAILEY, for the defendant in error.

This is an action at law against McDowell, executor of Richard Walker, late partner of the firm of Walker & Leak, for the recovery of a firm-debt, without joining the other partner, and without having sued him to insolvency.

We maintain that the executor cannot be sued at law at all, nor in equity, without joining the survivor.

On the death of Walker, all the choses in action, debts, and credits of the firm, vested in the survivor, and he alone had the right to possess them.—*Story on Partnership,* 494.

At law, the creditors have no remedy save against the survivor.—*Ib.* 513 ; 1 *Chitty's Pl.* 39, 40.

The representative of the deceased may be sued in equity.—*Story on Part.* 514. But then the survivor must be joined.—*Ib.* 515.

Mr. Story seems to hold, on the authority of some modern decisions, that such suit in equity may be maintained, although the survivor is not insolvent. But Mr. Collyer controverts this doctrine, and holds these modern decisions of doubtful authority.—*Collyer on Part.* 337 to 347. See also 3 *Paige Rep.* 167 ; 1 *Binn.* 123; 1 *Rawle*, 212 ; 1 *Har. and G.* 96.

The bill must expressly charge that the survivor is insolvent.—1 *Gallison*, 371, 630.

If the English judges fluctuate, we ought to adhere to the decisions prior to the revolution.—*Cathcourt* vs. *Robinson*, 5 *Peter's Rep.* 280.

But however the law may be, as to the right to sue in equity before insolvency of the survivor, it is agreed that by the law as it stood prior to 1818, the representative of a deceased partner could not be sued at law, nor in equity, without joining the survivor in the bill. But the plaintiff in error contends that the statute of 1818 (*Prince*, 443 ; *Hotchkiss*, 545) changed the law, in this particular, so that he has his option now to sue them both together, or each separately, and that at common law. If this be so, it is a great—not to say alarming—change in the rights and protection which the law once threw around the often minor heirs of deceased partners. It is not pretended that the law of partnership which vests all the choses in action, debts, and rights of action, in the survivor alone, is changed. Are we authorized, then, to presume that it could have been the intention of the Legislature to effect such gross injustice as to take from the deceased partner's representatives the means, and often the only means, of paying the debts of the copartnership, and vesting them in the survivor, and at the same time hold the representative liable to pay those debts, and the wife and children of the deceased liable to be stripped of all their separate private property, while a dishonest survivor holds partnership funds more than sufficient to pay the debts of the firm ? Such a presumption is unauthorized without the plainest and most undoubted declaratory language expressing such intention. Does the act in question manifest such intention ? We contend that it does not. We maintain that the act of 1818 does not apply, and was not intended to apply, to copartnership debts. Its words are : " When any person shall be in possession (either in his own right or any other capacity) of any note, bill, bond, or other obligation in writing, *signed* by two or more *persons ;* and one or more of the *persons* whose *names* are so *signed,* as aforesaid, shall die before the payment of the money, or the compliance with the condition of such bond, or other obligation in writing, the person or persons holding such note, bill, bond, or other obligation in writing, shall not be compelled, as heretofore, to sue the survivor or survivors alone, but may, at his or their discretion, sue the *survivor or survivors, or the* representatives of such deceased person or persons, or the survivor or survivors, in the same action with the representative or representatives of such deceased persons."

Now, the first inquiry is, what change was effected, and what mischief remedied by this statute? It is obvious that the Legislature had in view a class of contracts which two or more have subscribed, and yet, if one dies, the sole remedy at law is against the survivor ; and they intended to remedy the mischief of permitting this liability and right of action going with the dead to the grave. What were these contracts, the remedy upon which is so altered, and as to which such great change in the common law was effected ? The common law said, that if one of the joint-makers and signers of a note, bill, bond, or other obligation in writing, die, the sole remedy at law on such instrument is against the survivors. This the Legislature looked upon as an evil, because, in such joint contracts, the presumption of law and fact is, that each joint contractor has received value, and that the benefit has descended to the estate of the deceased, as in case of other joint and several contracts, and that the means of paying have not been taken from the representative as in case of deceased partners. This mischief they intended to remedy, and we contend they have taken especial care to make manifest their intention. Instead of saying that, in case any one of any joint debtors shall die, his representative shall be liable to be sued in the same manner, and in all such actions, as his testator or intestate would have been liable on such contract or

contracts, had he lived, (thus including partnerships' contracts as well as others,) they have carefully guarded their expression by the term Writing, *signed* by two or more *persons*, "and one or more of the *persons* whose *names* are so *signed* as *aforesaid.*"

Now, I hope the court will pardon me, if I so far draw upon the form-book of our science, as to remind the court that the name of a firm, and the moneys of the *persons* composing such firm, are in law apart and distinct; that to speak of a note or bill, signed with a firm-name, conveys wholly different legal ideas of such instrument than are conveyed in speaking of instrument *signed with names* of *persons;* that to say a note is signed with the name of Roswell King, James Donwoody, and James Bullock, persons composing the Roswell Manufacturing Company, is not equivalent to saying the note is signed with the firm-name of "the Roswell Manufacturing Co."

If a note, subscribed with a firm-name, were sued on, and declared to be signed and subscribed by the names of the persons composing such firm, would any court sustain such an action? That they would not, is too well settled to argue. Then, certainly, the Legislature have not, by the terms used, included contracts signed with firm-names, and the court never construes liberally a statute changing the common law, except for the suppression of fraud; more especially, if such construction would work hardship.

But let us suppose the Legislature intended to include all joint contracts, those of partnership as well as others. They have employed language the most inappropriate, with a prolixity wholly unnecessary to effect such a purpose, and, in the end, wholly failed to effect their object: for it is admitted that this statute applies only to contracts in writing, signed with the names of the persons contracting. Now, it is well known that such contracts comprise but a small part of partnership contracts, so that this absurdity would follow from the position of the counsel for plaintiff in error. On contracts signed in writing, the representative of a deceased partner would be liable; but on contracts not so signed, he could not be sued.

But the Legislature have shown that they were careful not to tamper with the delicate machinery of the law of copartnership. They have been careful, when they would legislate upon the subject, or effect any material change in that law, to employ language that all may understand. In the act of 1820, conferring the right to sue copartners and joint contractors residing in different counties, they have carefully used the term "joint contractors or copartners."—*Prince*, 446.

Again: in the act of 1837, authorizing limited copartnerships, the 4th section requires the *persons*, desirous of forming such copartnership, to sign a certificate which shall contain, 1st, the *name* of the firm; 2d, the *names* of the parties. Sec. 5th requires the certificate shall be acknowledged by the *persons signing* the same. Sec. 12th declares every alteration in the *names* of the partners a dissolution.

Again: the act of 1838 authorizes a partner, or one jointly interested in a suit, to sign the *names* of the partners, or persons jointly interested, to all necessary bonds. All which clearly shows the Legislature well understood the distinction between ordinary joint contracts and contracts of copartners, and also the difference between an instrument signed by a firm-name and one signed with the names of the *persons* composing that firm—the difference between an instrument signed with a corporate name and one signed with the names of the *persons* composing the corporation.

## By the Court—WARNER, Judge.

This action was instituted on a promissory note, signed with the co-partnership name of Walker and Leak. The defendant in error was sued thereon, as the executor of Walker—Leak, the other copartner, being still in life; and the question is, whether the executor of a de-

ceased copartner can be sued at law, for a copartnership debt; or wheth-er the surviving copartner is alone liable to be sued therefor.   By the common law it is admitted, the representative of the deceased partner could not be sued for a copartnership debt; but that the survivor was alone liable to be sued.   It is, however, contended that the act of 19th December, 1818, (*Prince's Dig.* 443,) alters the common law in this re-spect.   That act declares, " Where any person shall be in possession (either in his own right or in any other capacity) of any note, bill, bond, or other obligation, in writing, signed by *two or more persons,* and one or more of the persons whose names are so signed as aforesaid, shall die before the payment of the money, or the compliance with the con-dition of such bond or other obligation in writing, the person, or per-sons, holding such note, bill, bond, or other obligation in writing, shall not be compelled, as heretofore, to sue the survivor, or survivors, alone, but may at his, her, or their discretion, sue the survivor, or survivors, or the representatives of such deceased person, or persons, or the sur-vivor, or survivors, in the same action with the representative or repre-sentatives of such deceased person or persons, any law, usage or cus-tom, to the contrary notwithstanding."   This act declares, when any note, &c. shall be signed by " *two or more persons,*" that is, when two or more individuals shall sign a note, as two obligors, or joint promisers, with their *separate names,* the representative may be sued, &c.   This act being in derogation of the common law, must receive a *strict* construction, and, in our judgment, was not intended to embrace partners, where the partnership name alone is used.   By the common law, when one or two co-obligors died, his executor, or administrator, was discharged from liabi-lity, and the survivor alone was liable to be sued.—1 *Chitty Pl.* 37.

We are the more inclined to give this act a strict construction, so as not to include partners, for the reason the surviving partner has the right to control the partnership effects, for the purpose of paying the copart-nership debts; and as copartners are not included within the letter of the statute.   We think it can have effect without including them, and there are strong reasons why the executor of a deceased partner, who has none of the copartnership effects in his possession, should not be sued at law for a partnership debt.   Therefore, let the judgment of the court below be affirmed.